OPINION
This accelerated appeal emanates from the decision of the Trumbull County Court of Common Pleas, Probate Division, wherein the court held that the consent of appellant, Marilyn Mitchell, was not required before Ciera Mitchell ("Ciera"), a minor child, could be adopted by appellees, Wayne J. and Patricia M. Rodgers ("Mr. and Mrs. Rodgers"). For the reasons that follow, we affirm.
By way of background, Ciera was born on August 23, 1996. Appellant is the biological mother of Ciera, and appellees are the paternal great uncle and aunt, respectively. This was appellant's fifth child, and appellees were awarded legal custody of Ciera in December 1998. Because relatives retained legal custody of all of appellant's children, she was ordered to pay child support in the amount of $29 per month for each child.[1]
In May 1999, appellant was indicted by the Trumbull County Grand Jury for aggravated robbery with a firearm specification, in violation of R.C. 2911.01(A)(1) and (B) and R.C. 2941.141, a felony in the first degree. Pursuant to this charge, appellant has been incarcerated since July 1999. Appellant subsequently pled guilty to aggravated robbery with the firearm specification in November 1999 and was sentenced to a term of three years in prison, plus one year on the firearm specification to be served prior to and consecutive to the principal sentence.[2]
While incarcerated, appellant earned $20 per month and received funds from her mother and friends. Since April 1999, appellant has failed to make any child support payments.
The instant case arose when appellees filed a petition for adoption of Ciera on September 18, 2000. In their petition, appellees alleged that appellant's consent to the proposed adoption was not required pursuant to R.C. 3107.07 because appellant and the biological father, Jarred Mitchell ("Mr. Mitchell"), failed without justifiable cause to provide for the maintenance and support of Ciera for at least one year.[3]
In response to the petition, appellant, pro se, filed an objection to the adoption on November 1, 2000. The trial court subsequently appointed counsel to represent appellant in the proceedings.
This matter came on for a hearing on November 30, 2001. Prior to the hearing, Mr. Mitchell executed a written consent for placement wherein he gave his consent to place Ciera with appellees for adoption.
Due to her incarceration, appellant was unable to attend the November 30, 2001 hearing. As a result, she prepared an affidavit, which was accepted into evidence by the trial court. Appellant's attorney was present, as were appellees along with their counsel. Testimony was provided by Mr. Mitchell, Mrs. Rodgers, and Debbie Gregory ("Ms. Gregory"), a case worker.
On December 7, 2001, the trial court issued a judgment entry granting appellees' petition for adoption, reasoning that appellant had earned money and had additional funds available to her, that is, money received from her mother and friends, while in prison to contribute to the support of Ciera:
 "The Court further finds by clear and convincing evidence submitted that the birth mother has earned money while in prison and has had additional funds available to her while in prison; that such funds constituted discretionary funds available to the birth mother from which she could have made support payments no matter how small; that the birth mother could have contributed to the support of her minor child with these discretionary funds and that her failure to do so was without justifiable cause." (Emphasis added.)
Under these circumstances, the trial court found that appellees established, by clear and convincing evidence, that appellant had failed without justifiable cause to support Ciera. As such, the court determined that appellant's consent to the adoption was not required, and that appellees' adoption of Ciera was in the child's best interest.
It is from this judgment appellant appeals, advancing two assignments of error for our consideration:
 "[1.] The Trial Court erred in its decision to grant the adoptive placement of the child to the Petitioners in that justifiable cause for nonpayment of support was present[.]
 "[2.] The Trial Court erred in deciding that it was in the child's best interest to grant the adoptive placement in light of the presence of justifiable cause[.]"
Before we may consider the merits of appellant's appeal, we must address a procedural issue which has been brought to our attention after reviewing the record.
In their adoption petition, appellees alleged that non-support occurred "for a period of at least one year immediately preceding the placement of the minor." However, it is evident from the evidence presented at the hearing, appellant's trial brief, and appellees' answer brief on appeal that the relevant time period actually litigated was at least one year prior to the filing of the adoption petition. Further, the majority of evidence presented at the petition hearing dealt with the time after the child was legally placed in appellees' custody in December 1998. Thus, the parties all focused on the issue of non-support one year prior to the filing of the petition, to wit: September 18, 1999 to September 18, 2000. This issue was tried to the court without objection; as a result, appellant suffered no prejudice therefrom. In fact, a review of appellant's trial brief indicates that she believed that the relevant period of non-support was one year prior to the filing of the adoption petition. As such, the trial court presumably considered the adoption petition amended to conform with the evidence presented at the hearing. Civ.R. 15(B). See, also, In re Adoption of Manley (Dec. 14, 2001), Montgomery App. No. 18946, unreported, 2001 Ohio App. LEXIS 5606, at 1-3; In re Adoption of Kraft (May 4, 1984), Lucas App. Nos. L-83-389 and 81-62420, unreported, 1984 WL 7868, at 6 (Douglas, J., dissenting).
Even on appeal, the contention of both parties is that the period in question was the year prior to the filing of the adoption petition. Therefore, for purposes of appellate review, this court will focus on the period of time beginning at least one year prior to the filing of the petition, which would be September 1999 to September 2000.
Returning to the merits of this appeal, in the first assignment of error, appellant maintains that she only generated $20 per month while incarcerated and received money as "gifts" from her family and friends that was inconsistent at best. From this, appellant suggests that the gift of monetary funds should not have been viewed by the trial court as "discretionary income" because gifts are not included in the computation of a party's income for the purpose of determining and paying child support. Appellant also seems to suggest that funds received had to be used to pay for her own necessities in prison.
The question of whether a natural parent has failed to support his or her child without justifiable cause is a determination for the trial court and "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." In re Adoption of DiDonato
(Mar. 30, 2001), Lake App. No. 2000-L-182, unreported, 2001 WL 316183, at 2, citing In re Adoption of Bovett (1987), 33 Ohio St.3d 102, paragraph four of the syllabus; In re Adoption of Masa (1986), 23 Ohio St.3d 163, paragraph two of the syllabus.
In this case, the petitioner for adoption bears the burden of proving, by clear and convincing evidence, that the natural parent has failed to support the child for at least one year, and that his or her failure was without justifiable cause. Bovett at paragraph one of the syllabus; Masa
at paragraph one of the syllabus. Once the petitioning party has established that the natural parent has failed to support the child for at least one year, the burden then shifts to the natural parent to show "some facially justifiable cause for such failure." Bovett at paragraph two of the syllabus. See, also, DiDonato at 2. However, the ultimate burden of proof remains with the petitioning party. Bovett at paragraph two of the syllabus.
Recently, in In re Adoption of Sartain (Mar. 22, 2002), Lake App. No. 2001-L-197, unreported, 2002 Ohio App. LEXIS 1344, at 12-13, this court explained the precise burden the petitioner must meet:
 "This court has set forth a two-prong analysis where a petitioner for adoption must prove, by clear and convincing evidence, that the natural parent failed to support the child and that the failure to support was without justifiable case. In re Geisman (Sept. 29, 2000), Ashtabula App. No. 99-A-0071, unreported, 2000 Ohio App. LEXIS 4577, at 10, citing Bovett, supra, 33 Ohio St.3d at paragraph one of the syllabus. In Geisman, we stated that finality is not achieved by a showing of no support or nominal support alone. Id. Rather, the second prong requiring a showing, by clear and convincing evidence, that the natural parent was without justifiable cause for providing no support or only a nominal contribution, must still be demonstrated. Id. A natural parent can fulfill his duty of support under R.C. 3107.07(A) through non-monetary contributions. McNutt, supra, 134 Ohio App.3d at 831." (Emphasis added.)
With these standards in mind, we consider the testimony and evidence presented at the adoption petition hearing.
According to Mr. Mitchell, he was married to appellant for nearly five years, during which time appellant used cocaine. Although the parties divorced sometime in 1996, Mr. Mitchell maintained some form of a relationship with appellant until her incarceration in 1999. Mr. Mitchell claimed that during this period of time, appellant continued to use drugs.
Further, Mr. Mitchell believed that appellees have done an outstanding job in caring for Ciera. In his opinion, "[i]f [appellant] was to come out and take Ciera out of [appellees'] hands, then Ciera is going to be demolished."
Mrs. Rodgers also confirmed that appellant used crack cocaine. Ciera has been living with Mr. and Mrs. Rodgers since November 1998, at which time the child was two years old.
As for appellant's relationship with Ciera, Mrs. Rodgers testified that from December 1998 until August 1999, appellant did not have any contact or communication with her daughter. Then, in August 1999, appellant sent a birthday card to Ciera. Thereafter, Mrs. Rodgers indicated that she would get correspondences from appellant once a month.
In terms of formal support and maintenance, appellant provided only one child support payment in the amount of $39.60 in April 1999. Since then, appellees have not received any payments for child support from the Trumbull County Child Support Enforcement Agency.
Only after the adoption petition was filed in September 2000 did appellant send her daughter a scarf and hat for Christmas in December 2000. Then around Easter time, appellant sent Ciera a purse filled with candy, and in August 2001, gave Ciera a teddy bear. Other than the hat and scarf, Ciera did not receive any other clothing from appellant.
Ms. Gregory, a case worker with the Trumbull County Children Services Board, was asked to conduct a home study evaluation of appellees. According to Ms. Gregory, if appellant's consent was not needed, it was the recommendation of the agency that the placement of Ciera in appellees' home was in the best interest of the child.
To further support their position that appellant failed to maintain and support Ciera without justifiable cause, appellees admitted into evidence, inter alia, copies of appellant's inmate account from December 1999 to July 2001, which provided an account balance and indicated the purchases made by appellant with these funds. According to these documents, appellant earned income while incarcerated, received money from outside sources, and spent money on non-essential things such as arts and crafts, and donuts.
In an attempt to show that the failure to pay child support was justifiable, appellant executed an affidavit and attested to the following:
 "2. I only earn about $20.00 per month for the work that I do while I am incarcerated;
 "3. I receive about $100.00 per month from my mother which is not consistent and every so often one of my friends will send me money that is never more than $40.00;
 "4. I use this money to pay for all of my personal necessitates such as personal hygiene products, clothes, food and the like; The penal institution does not provide any of these items except for meals; I am responsible and liable for the purchase of these items;
 "5. I have on occasion sent clothing to my daughter for her support[.] This is done when I have some finances built up;
 "6. I have not been able to maintain employment in the past because of my drug dependency;
 "7. I have maintained contact with my daughter by cards and letters while I have been incarcerated;
 "8. My other children have been brought to see me while I have been incarcerated but Ciera has not[.]"
Having reviewed the testimony and evidence, we are mindful that a natural parent's incarceration is but one factor for a trial court to consider when determining whether the parent had justifiable cause to fail to provide for the maintenance and support of the child. Dallas v.Dotson (1996), 113 Ohio App.3d 484, 488; In re Adoption of Carter (Dec. 15, 1995), Gallia App. No. 95 CA 11, unreported, 1995 WL 756569, at 6.
As previously mentioned, appellant argues that the "gift" of monetary funds from her mother and friends should not have been viewed by the trial court as "discretionary income" because gifts are not included in the computation of a party's income for the purpose of determining and paying child support.
We are mindful that there may be instances when computed income for the purposes of child support will not necessarily reflect subsequent income received by that parent. Nevertheless, those additional funds received by the parent can be and should be used to provide the support and maintenance for the minor child, which had been computed on the previous income. Further, appellant never sought to have the court ordered child support obligation eliminated or modified as a result of her incarceration; as such, the court order remained in effect, and appellant was still bound to provide child support payments in the amount of $29 per month. For this reason, the trial court did not err in finding that the funds received by appellant from her mother and friends constituted discretionary income.
Thus, in addition to earning income while incarcerated, appellant had other resources, that is, funds received from her mother and friends, from which she could have provided some nominal support to her child. Appellant failed to make any child support payments for one year prior to the filing of the adoption petition on September 18, 2000. However,
 "[t]he failure to make court-ordered child support payments is only one factor of support and maintenance that the probate court has to consider before making its decision. Neither the Supreme Court of Ohio nor the General Assembly has ever indicated that if the natural parent has failed to make any court-ordered child support payments in the previous year, the natural parent's consent is not required. Rather, the probate court is to make a determination based on all of the evidence presented for and against the parties' respective positions with respect to the support and maintenance of the child." (Emphasis added.) DiDonato
at 4.
The critical fact in this case is that appellant failed to provide any
support for her daughter. Stated another way, the issue in this case is not solely that appellant failed to pay the court ordered child support obligation of $29 per month. As this court has pointed out earlier, "even if appellant was not under any specific statutory duty to pay support, [she] still had a common-law obligation to pay support to the best of [her] ability." In re Adoption of Freel (June 14, 1996), Trumbull App. No. 95-T-5303, unreported, 1996 WL 648977, at 4. Rather, the issue is that appellant failed to provide any support, monetary or otherwise, during the relevant one year period.
In an attempt to justify her failure to provide support, appellant claimed that what little money she received while incarcerated went towards her own personal necessities, "such as personal hygiene products, clothes, food and the like; The penal institution does not provide any of these personal items except for meals[.]" However, a review of appellant's inmate account shows that she also spent money on non-essential items, such as arts and crafts and donuts.
Under these particular circumstances, we believe that there was some competent, credible evidence to support the trial court's finding that appellees established, by clear and convincing evidence, that appellant had failed to support her child without justifiable cause for at least one year prior to the filing of the petition. Therefore, appellant's first assignment of error is meritless.
In assignment of error two, appellant contends that the trial court cannot proceed to determine the best interest of the child when justifiable cause has been established for her failure to support her child.[4]
In light of our holding in the first assignment of error that appellant had failed to support her daughter without justifiable cause pursuant to R.C. 3107.07 (A), the second assignment of error is rendered moot.
As a final thought, we note that our holding in this case is dependent on the specific facts presented herein. As such, this court is not of the opinion that an incarcerated parent automatically loses all of his or her parental rights. We are, however, mindful that with parental rights come responsibility. While the parent does not automatically lose his or her rights due to incarceration, he or she is not automatically absolved from providing support, maintenance, or communication to the child.
As mentioned earlier in this opinion, incarceration is but one factor for a trial court to consider when determining whether the parent had justifiable cause to fail to provide for the maintenance and support of the child. In the instance matter, given that appellant had earned income while incarcerated, received additional funds, and was able to spend these funds on non-essential items such as donuts and arts and crafts, we held there was some competent, credible evidence to support the trial court's finding that appellees established, by clear and convincing evidence, that appellant had failed to support her child without justifiable cause. With such funds available to appellant during her incarceration, she could have contributed some nominal support to her child. In this case, appellant provided absolutely no support during the relevant period of time. It was only after appellees' filed their petition for adoption did appellant send the minor child a hat and scarf, a purse full of candy, and a teddy bear.
Having said that, we find appellant's two assignments of error without merit.
Accordingly, the judgment of the trial court is affirmed.
O'NEILL, P.J., dissents with Dissenting Opinion, GRENDELL, J., concurs.
[1] This is reflected in a December 28, 1998 judgment entry issued by the Trumbull County Court of Common Pleas, Division of Domestic Relations, Juvenile Department. This judgment entry was introduced into evidence as appellees' exhibit 2 during the November 30, 2001 hearing on the adoption petition.
[2] The November 22, 1999 sentencing entry issued by the Trumbull County Court of Common Pleas was submitted into evidence during the petition hearing as appellees' exhibit 9.
[3] R.C. 3107.07(A) reads as follows:
 "A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." (Emphasis added.)
[4] Appellant does not specifically argue that appellees' adoption of Ciera was not in the child's best interest. Rather, appellant merely submits that with the establishment of justifiable cause for the nonpayment of child support, the trial court could not consider the best interest phase of the adoption process. As such, we will limit our analysis accordingly.